TURNER (BAPTIST MISSIONARY UNION v.). See Case No. 968.

═══════

## Case No. 14,252.

### TURNER v. BEACHAM.

. [Taney, 583.] [1]

Circuit Court, D. Maryland. April Term, 1858.

ADMIRALTY—JURISDICTION—MARITIME CONTRACTS —ACTION PENDING IN STATE COURT.

1. If a contract be the ordinary one for repairs or supplies to a domestic ship. and the only matter in dispute be, to whom the credit was given, and who is liable for the amount, it will be a case for admiralty jurisdiction; and the admiralty court may determine whether the owner of the ship, or certain anticipated and contingent partners, are liable for such repairs and supplies.

2. But where there was inseparably connected with a maritime contract of this sort, and forming part of it, an agreement, by the contractor for the repairs and supplies, to become a partner in a company to be formed to purchase the vessel: Held, that a contract to form a partnership to purchase a vessel is not a maritime one; a court of admiralty has no right to decide whether such a contract is legally or equitably binding, nor to adjust the accounts and liabilities of the different partners.

[1] [Reported by James Mason Campbell, Esq., and here reprinted by permission.]

3. It is a clear rule of admiralty jurisdiction, that, although the contract which the party seeks to enforce is maritime, yet, if he has connected it inseparably with another contract over which the court has no jurisdiction, and they are so blended together that the court cannot decide one with justice to both parties, without disposing of the other, he must resort to a court of law, or a court of equity, as the case may require, and the admiralty court cannot take jurisdiction of the controversy.

4. The admiralty court cannot adjust the rights and liabilities of the parties upon one portion of such a contract and leave the other to be litigated in another court.

5. If the same question, between the same parties, upon the same subject-matter, be pending in a state court, of competent jurisdiction to decide upon all the rights in controversy, the admiralty court will refuse to entertain a suit upon any portion of the matters so in litigation in the state court.

[Appeal from the district court of the United States for the district of Maryland.]

This was an appeal from the court of admiralty, on a proceeding in personam, instituted on the 21st of May, 1857, by Silas Beacham, the appellee [against Robert Turner]. The district court passed a decree in favor of the libellant, and an appeal was taken to this court.

J. Carson. for libellant.
B. C. Barroll, for respondent.

TANEY, Circuit Justice. This is a libel in personam, for work done and materials and equipments furnished by Beacham, for the steamboat Susquehanna, of which the libel alleges that Turner was the owner at the time. Turner, in his answer, denies the jurisdiction of the court, and sets up a partnership ownership of the steamboat, by a company, in which he, and the libellant and sundry other persons, were partners; and for which company, he avers, the work was done; and avers that the partnership account is unsettled, and a suit is now depending in a court of equity in order to adjust it. Many witnesses have been examined on both sides; and the case, as presented by the record, is exceedingly complicated. The whole transaction appears to have been conducted in such a loose and irregular manner, that it is difficult for a court to determine what the parties intended by their contracts and proceedings.

It is not necessary, however. in the view this court takes of the subject, to go into a detailed examination of these complicated and loose proceedings; a brief summary will show the character of the case as it comes before this court. Turner, the appellant, it appears, after a consultation with one or two other persons, determined to buy this steamboat, which was then lying at Havre de Grace. and to have her fitted up as an ice-boat, to be used in keeping open the navigation of the harbor of Baltimore during the winter. The plan was. that the boat should be brought to Baltimore and fitted up for the purpose for which she was intended; and should become the property of a company who should apply for a charter from the state. The price at which it was originally proposed that she should become the property of the company was $25,000; and afterwards. it appears to have been reduced to the original cost of the boat, and the expenses incurred in putting her in complete order, which it is said would amount altogether to fifteen or sixteen thousand dollars.

In pursuance of the plan formed by Turner and others, as before mentioned, he sent an agent to Havre de Grace, who purchased the boat for him for $4,000, and she was brought to Baltimore and registered as belonging to Turner, he taking the usual oath that he was the sole owner. The same agent was employed by Turner to employ workmen and mechanics to put her in order, for the purposes for which she was intended, and at the same time to solicit subscriptions for shares, in order to form the company contemplated; the mechanics who were employed to do the work were all apprised of the plan, and were required to take a certain amount of stock in the company, as a condition upon which alone they would be employed. The libellant engaged to do the blacksmith's work, and in consideration of being so employed, he agreed to take stock to the amount of $200; and his subscription was accordingly entered for that amount, by the direction of the person whom he had authorized to enter it.

It does not appear that the amount required was subscribed; but those who had subscribed met, and appointed a committee to take charge of the boat, and to obtain the contract with the city authorities for keeping open the harbor; the appellant and appellee were both present at the meeting. The boat performed two or three trips under the direction of the committee; but they failed to obtain the contract with the city, and therefore, the whole enterprise was soon after abandoned. and the boat remained unemployed. It was then found, that her value was very far below what she had cost. including the very expensive repairs which had been put upon her after she was purchased by Turner; and Turner states in his answer, that he has since filed a bill in the circuit court for the city of Baltimore, charging that she belonged to the persons who subscribed for shares, and praying for a sale of the vessel. and a settlement of the partnership accounts; that she has been sold accordingly, a receiver appointed, and that the proceedings are still pending there to adjust the partnership accounts.

In this state of things this libel was filed; and the libellant claims to recover the whole amount of his bill from the appellant, without deducting anything on account of his subscription of $200 for shares in the company. And several questions have been raised on the pleadings and evidence which

it is proper to state, in order to determine whether the case before me is within the jurisdiction of a court of admiralty.

(1) The libellant contends that the work and materials furnished by him, were furnished on the credit of Turner, who was the owner of the boat, and not on the credit of an embryo company, not then brought into existence, and which might never come into existence. (2) That he is not bound to deduct from his claim against the appellant, the two hundred dollars which he agreed to take in the stock of the proposed company, because the sum to be subscribed to purchase the boat, was never subscribed. (3) That if it had been subscribed, the libellant was not bound by his subscription, because it had been obtained by the misrepresentation of Turner as to the capacity and fitness of the boat for the purpose for which the company intended to use her; and also, because by the terms of his contract, he was to have had the whole of the blacksmith's work, and a part of this work was given to another person.

(1) On the part of Turner it is contended, that the contract was made and the work done upon the credit of the contemplated company, to which, and not to him personally, the libellant and the other mechanics who worked upon the vessel were to look for payment. (2) That the company was brought into existence, and the libellant was a partner in it, and as such took a share in its proceedings. (3) That the accounts between him and the other partners, and with the libellant, as one of the partners, are unsettled. (4) That the partnership assets are now in the custody of a court of the state, and proceedings pending there to adjust the partnership accounts; and were so pending before and when this libel was filed.

These are the questions which have arisen in the case, and present the inquiry into the jurisdiction of the court of admiralty. If the *contract* of the appellee had been the ordinary one for repairs or supplies to a domestic ship, and the only matter in dispute was to whom the credit was given, and who was liable for the amount, it is very clear that it would be a case for admiralty jurisdiction; and the court would, undoubtedly, be authorized to determine, whether Turner or the anticipated and contingent partners would be liable to the libellant for the money; and this question, upon the testimony, could be easily disposed of. But inseparably connected with this maritime contract, and forming a part of it, is the agreement to become a partner in a company to be formed to purchase the vessel. Now, a contract to form a partnership to purchase a vessel, or to purchase anything else, is certainly not maritime; a court of admiralty has no right to decide whether such a contract was legally or equitably binding, nor to adjust the accounts and liabilities of the different partners. These questions are altogether outside of the jurisdiction of the court; and yet the amount actually due to the libellant, by whomsoever it is to be paid, cannot be decided, until these questions are first examined and determined. And I consider it to be a clear rule of admiralty jurisdiction, that although the contract which the party seeks to enforce is maritime, yet, if he has connected it inseparably with another contract over which the court has no jurisdiction, and they are so blended together that the court cannot decide one, with justice to both parties, without disposing of the other, the party must resort to a court of law, or a court of equity, as the case may require, and the admiralty court cannot take jurisdiction of the controversy. The case of Grant v. Poillon was decided upon this ground, at the last term of the supreme court. 20 How. [61 U. S.] 162.

If the contract for repairs, and for the partnership, had been separate contracts, there would be no doubt of the jurisdiction; and so also, if the partnership had related to some collateral matter. But according to the testimony, the agreement to repair the boat and to become part-owner of her with the libellant and others, were but parts of one and the same contract, and in relation to one and the same thing, that is, the boat to be repaired; and this court cannot adjust the rights and liabilities of the parties upon one portion of the contract, and leave the other to be litigated in another court. If it has not jurisdiction over the whole contract, it could not, without great injustice, dispose of a part and compel the party to pay money on one portion of it, and leave it to another court to decide whether he had not claims against the libellant upon the partnership branch of it, which ought to have been adjusted before the account for work on the vessel was paid. Upon these grounds, the court is of opinion, that the decree of the district court must be reversed, and the case remanded, with directions to dismiss the libel for want of jurisdiction in the district court.

I have said nothing of the proceedings in the state court of equity, to which the appellant refers in his answer. They have not been filed in the case, and this court cannot, therefore, regard them as open to consideration here. Certainly, if the same question, between the same parties, upon the same subject-matter, were pending in a state court, of competent jurisdiction to decide upon all the rights in controversy, this court would refuse to entertain a suit upon any portion of the matters so in litigation in the state court.